## In the Matter of the Estate of CHRISTOPHER MASON, dec'd.

In the marshalling of assets for the payment of debts, a mortgage, like all other contracts for the payment of money, must be paid out of the effects left by the deceased. It is a debt, and the land specifically bound by the mortgage is only additional security for its payment. Generally speaking, it is to be paid out of the fund appropriated by law for the payment of debts.

The personal effects of the deceased in the first place are to be applied to the payment of a mortgage, as well as any other debt. As between the mortgagor and personal representatives of the deceased, a general devisee is entitled to the personal estate. But this rule does not apply so as to defeat the rights of specific or pecuniary legatees.

But if an intestate in his lifetime has purchased an estate encumbered with a mortgage, his personal effects will not in the first instance be taken to pay the mortgage-debt, although he covenanted with the vendor to pay the mortgage and indemnify him from its payment. A mortgage upon a man's estate, not of his own contracting, is not considered his debt, payable out of his personal estate. There must be an express direction in the will, throwing the charge of the payment of the mortgage on the personal property.

Other lands devised are not liable to contribute to the payment of a mortgage purchased by the testator in his lifetime, where no provision is made in the will for such payment.

A devisee who has taken land under a will charged with a mortgage created by the testator in his lifetime, cannot call upon other devisees who have taken other land under the same will, specifically devised to them, to contribute rateably towards the extinguishment of such encumbrance. In respect to his relation with other devisees, such devisee takes the land *cum onere.* Nor is such devisee entitled to have his land exonerated from such encumbrance out of personal estate specifically bequeathed. The rule is different as to creditors.

It has been decided in Pennsylvania, that specific and pecuniary legacies bequeathed to children ought not to be brought in case of particular land encumbered with a mortgage, devised to another child. In all such cases the devisee takes the land *cum onere.*

Where a testator devises his lands specifically to various persons, making no provision for his widow whereby her dower is to be paid, one who has been compelled to pay the widow her dower out of the land devised to him, cannot call upon the other devisees of real estate for contribution. Her claim is equal upon all the land taken by each devisee, and each is only bound to contribute in proportion to the land devised, and only out of the particular parcel given under the will. All devisees accept the land thus devised, conscious of the widow's claim for dower, and each must bear the encumbrance on the property thus accepted.

*March* 15. THIS case arose on a petition presented to the Orphans' Court of Philadelphia county by one George Hocker, who stated that he was a devisee under the last will and testament of Christopher Mason, deceased; that certain real estate had been devised to him by the testator, consisting of two several parcels of land, with buildings thereon, &c. On each of those two pieces of land were mortgages of different amounts, one of which was a mort-

gage given by one George Martin for the payment of $900, immediately after the death of Magdeline Hesser, the widow of one George Hesser, who was the former owner of the land, and for the payment of the interest annually on said sum, during the lifetime of said widow, which land had been purchased by said Christopher Mason, in his lifetime, under and subject to said mortgage, who before his death had reduced said mortgage to $475, and since the petitioner had accepted said devised premises, he had paid to Magdeline Hesser the interest on said sum down to the time of her death, which was in 1843.; and that the holder of said mortgage was about to collect the principal sum due out of said property, on which it was a specific lien.

The petitioner also stated that the said Mason by his will devised to him another piece of land (describing it), on which the deceased had, in his lifetime, given a mortgage to Reuben Haines, for the sum of $1600, upon condition that said Mason should indemnify said Haines and his heirs from the claim of dower which his wife Susan might make on said land, to the amount of $800 ; and setting forth that since the death of said Mason his widow had made a claim upon the legal representatives of said Haines, and had actually received from them the sum of $356, which sum they were about to endeavour to collect on said mortgage, with which the tract so devised to him was encumbered.

The petition then set forth that said Christopher Mason died seised of other real estate, devised to other individuals, naming them, and prayed the Court for a decree of contribution from those respective devisees, in proportion to the value of the lands thus devised.

The petitioner also set forth another ground of complaint, which was, that Susan, the widow of said Christopher Mason, had made her demand for dower upon both of said pieces of land, and that he had been compelled to pay her more than $500, which he also prayed might be a proportionable charge upon the land devised to other individuals, who were devisees under the same will.

The cause was argued by *F. C. Brewster*, for the petitioner, and *W. L. Hirst*, for the respondent.

The Court dismissed the petition, when an appeal was taken to the Supreme Court, and the decree was affirmed : See 4 Barr, 497.

The opinion of the Court was delivered by

PARSONS, Judge.—This is a petition filed by George Hocker, a

devisee under the will of Christopher Mason, deceased, asking the Court to decree a contribution from other devisees, under said will, for money which he alleges has been and may be collected out of two pieces of land which were devised to him by the testator. In his application, he sets forth three distinct claims, each of which will be considered in the order they are presented. The petition first states that there was devised to him by said will, a house and one acre of ground, which had been conveyed by Jacob Haas, administrator of George Hesser, to George Martin, who, on receiving the deed, executed a bond and a mortgage on the property conditioned for the payment of $900 immediately after the death of Magdeline Hesser, and the interest annually during her natural life; that on the 30th of December, 1826, said Martin conveyed the same property to Christopher Mason, subject to the payment of said bond and mortgage, and interest; and that down to the time of his death, the said Mason regularly paid the annual interest on the same, also reduced the principal to the sum of $475; and that said petitioner paid the accruing interest on the same, up to the time of the death of said Magdeline, which occurred in March, 1843; and that the holder of said bond and mortgage is about to collect the principal by an enforcement of the lien created by said mortgage on the property. Hence the question raised is, whether the other devisees of land, under said will, are bound to contribute anything towards payment of said sum.

From the view which the Court take of the case, it is perhaps unnecessary for us to decide whether, by Mason's accepting a deed for this property, there was created a covenant on his part to pay the mortgage or not, and for the present we deem it immaterial; although, from the principles laid down in Campbell v. Thrum, 3 Watts, 60, I should be inclined to think, from the fact of his accepting the deed subject to the payment of the mortgage, the law would imply a covenant on the part of the vendee to pay the amount which was due on the same; but, in making an application of the rules of law that we think govern this case, no express opinion is requisite on this point.

It may be well, in the first place, to inquire out of what property or fund a mortgage is to be paid, in marshalling the assets of a deceased person.

It seems to be well settled that a mortgage, whatever may be the form of the security, whether it be accompanied with, or be without a covenant or bond for the payment of the money borrowed or

secured to be paid, being, in the abstract, and intrinsically, no more than a contract for a borrowing and lending, is only a debt, and the estate mortgaged is a pledge by way of additional security for the money borrowed; hence it follows that the mortgagor is bound to make good the money, if the land proves a defective security. From this consideration of the character of a mortgage, the conclusion is irresistibly formed, that it is as much a debt due by the deceased, as one contracted by a bond or any other sealed instrument, and even of more solemnity than a simple contract debt. Therefore, generally speaking, it must be paid out of the same fund appropriated to the payment of other debts. Thus we find the rule laid down in Powell on Mortgages, 780. It being then once established that a mortgage was a specialty debt, it followed, of course, that the personal estate was, in the first place, to answer it in equity, as between the heir-at-law of the mortgagor, and his personal representatives. So, likewise, a general devisee is entitled to have the personal fund applied in payment of a mortgage on a devised estate : Powell on Mortg. 782. But this rule of exonerating the charge on the real, and casting it on the personal estate, does not apply so as to defeat the rights of specific or pecuniary legatees (see Tipping *v.* Tipping, 1 P. Wm. 729); and so far have the Courts in England carried the doctrine, that personal funds must pay the mortgage on real estate, although it leave younger children entirely destitute : Powell on Mortg. 785. Such is undoubtedly the law in relation to a mortgage executed by the deceased, where he, by his own special contract, has encumbered the estate; but I apprehend this rule does not apply where a testator has purchased an estate encumbered with a mortgage, which is the case now before us for decision, such being the facts stated in the petition.

It is said by Mr. Powell in the book above cited, p. 862, " If one purchase an estate subject to a mortgage, his personal estate will not be liable to exonerate the real estate from the payment of a mortgage-debt, although he covenanted with the vendor to pay the mortgage and indemnify him from all costs and charges in respect of it : for in such case the personal estate of the purchaser has not received any addition to its funds by means of the mortgage." So likewise it was said by Sir William Grant, master of the rolls, in the case of Hancox *v.* Abbey, 11 Ves. 189, " a mortgage upon a man's estate, not of his own contracting, is not considered his debt, payable out of his personal estate." The ancient and modern English decisions are full on this subject. I shall not attempt to

cite them all, but will only briefly refer to a few. In the case of Pockley v. Pockley, 1 Viner, 36, decided by Ch. Nottingham, in 1641, it was ruled that where one purchased land subject to a mortgage-debt, it did not make the debt personal; and it required an express declaration by will to charge the personal assets with it. The cases of Coventry v. Coventry, Strange, 596, 2 P. Wm. 222. contain a similar doctrine. So in the case of Bagot v. Crighton, 1 P. Wm. 347, the ancestor mortgaged his estate and died. His daughter and heir, Lady Bagot, afterwards joined with her husband in a deed and fine, whereby she settled her estate on her husband and herself and the heirs male of the body of her husband; he afterwards joined in an assignment of the mortgage (the mortgagee wanting his money), and covenanted to pay the money due on the mortgage of the ancestor. It was held by Lord Ch. Cowper, the personal estate of the deceased husband was not liable to be applied in ease of the mortgaged premises; for the debt was originally that of the ancestor, and continued to be so; the covenant upon transferring the mortgage was an additional security for the satisfaction of the lender, and not intended to alter the nature of the debt. Subsequent cases contain the same doctrine; and, perhaps, we may mention Twaddell v. Twaddell, 2 Bro. 101, 152, as a leading case upon the subject; Billinghurst v. Walker, 2 Bro. 604; Butler v. Butler, 5 Vesey, 534; Matheson v. Hardwill, 2 P. Wms. Note, 664; Tannihill v. Pawsit, 2 Bro. 27. Most of these were cases in which there were covenants or other contracts with the mortgagee to pay the debt, and that was held not to be a sufficient requisite; that the dealing with the mortgagee must be of such a nature as to afford decided evidence of an intention to shift the primary obligation from the real to the personal fund; and all the cases agree that no covenant with the mortgagor is sufficient for that purpose: 2 Powell on Devises, 675. The person on whom the estate devolves takes it *cum onere*: Cornish v. Shaw, Ch. Cas. 271. The Courts in this country, where the subject has been presented before them, hold the same doctrine as that established by the English authorities. I will barely refer to one or two: in the case of Cumberland v. Caddington, 3 Johns. Ch. 229, it was held, that where a person takes a conveyance of land subject to a mortgage, covenanting to indemnify the grantor against the mortgage, and having paid off part of the encumbrance dies intestate, the land is the primary fund to be resorted to for payment of the residue, and the heir cannot throw the charge upon the personal representa-

M

tives.  And it seems to be further ruled, that, if the purchaser has ever rendered himself liable at law to the mortgagee or creditor for the payment of the debt, this circumstance will not be sufficient to change the natural course of the assets ; there must be strong and decided proof of intention to subject the personal estate to the charge, by an express direction in his will, or language equivalent to an express direction, before the purchaser may throw the charge upon the personal assets.  Chancellor Kent, after reviewing most of the English cases upon this subject, in a very elaborate opinion, concludes his examination by saying, " that the result of the cases seems to be that, as to wills, the testator may by express directions charge such an encumbrance upon his personal assets, or even without express words he may do it by dispositions and language that are tantamount ; as if, for instance, the continuance of the charge primarily on the land would be repugnant to some of the provisions in the will and defeat them.  As to other acts of the purchaser in his lifetime, in order to charge his personal estate as the primary fund, he must make himself by contract personally and directly liable at law for the debt to the owner of encumbrance ; and even a covenant or bond for the purpose will not be sufficient, unless accompanied with circumstances showing a decided intention to make truly the debt personally his own :" Kensey *v.* Kensey, 9 S. & R. 71.  If, then, we apply the principles above mentioned to the facts of the case now before us, it is manifest we cannot decree a contribution from other devisees for any money that the petitioner has paid, or may be liable to pay, in consequence of the encumbrance complained of.  If the personal estate of the deceased could not be applied by the executor in ease of this mortgage, *a fortiori* other land specifically devised could not be made to contribute to a fund for that purpose.  This is the mortgage of George Martin ; he is personally liable to the mortgagee for the debt ; the land is an additional security ; Christopher Mason, if ever liable on any contract, it could only be upon an implied covenant ; and we have, I think, clearly shown that, even had he given an express covenant, this devisee could not call in aid his personal estate for the relief of the devised premises.  There is nothing in the will of Mason which goes to show that he intended the personal fund left by him to go in payment of this mortgage ; and, in the absence of any such declared intention, it is difficult to see how the executor could have applied money for the relief of one particular devisee. It is not the creditor or holder of the mortgage who now invokes the

aid of this Court; such a claim would present a different case. It is a devisee who asks for contribution, and we think he is not entitled to it on this demand.

It is further set forth in said petition for another claim, that said deceased devised to the said George Hocker another lot of ground, containing six acres, on which there was a mortgage executed by the said Christopher Mason, accompanied with a bond to Reuben Haines for $1600, conditioned that said Mason would indemnify and save harmless the said Haines and his heirs to the amount of $800 from any claim which Susan, the wife of said Christopher, should make for dower out of a piece of land conveyed by said Mason to said Haines on the 20th of April, 1830, averring that after the death of said Mason, Susan his widow made her demand for dower, and received from the land sold to Haines the sum of $356, which sum the representatives of Reuben Haines are about to endeavour to collect on said mortgage, by enforcing the same in virtue of the lien on said lot of six acres of ground, and that they demand payment from this petitioner.

He therefore prays that the other devisees under said will, and named in the petition, may be compelled to contribute their rateable proportion out of the lands taken by them under the respective devises in the will, towards the payment of the same.

In the consideration of this branch of the case, it must be borne in mind that this is the personal debt or mortgage of the deceased, and also that the executor is not asking us to decree that all the land devised shall be made to bear a respective portion of the demand upon the ground that the personal effects of the estate have been exhausted by the payment of debts. Nor are we informed whether there are or are not sufficient personal assets for the payment of this sum secured by the bond and mortgage. But the naked question presented for our decision is this: can a devisee who has accepted a devise of land under a will charged with an encumbrance, call upon other devisees who have taken other land specifically devised to them under the same will, to contribute rateably towards the extinguishment of the encumbrance thus created by the testator, or does said devisee take his portion of the estate *cum onere?* Does he accept the property charged with the encumbrance so far as it respects other devisees or specific legatees?

It seems to be a settled principle in relation to this point, that, in the absence of any expressions of intention to the contrary, the devisee of a mortgaged estate is entitled to have the encumbrance

discharged out of the following funds, as the rule is settled in England: The general personal estate; lands expressly devised for the payment of debts. If secured by bond or covenant, or if the testator were a trader, freehold lands descended to the heir, and this, whether the debt were secured by specialty or not, or the testator were a trader or not. Lands devised charged with debts; and in such case, if the estate devised to him were included in the charge, he would be liable to contribute rateably with the other devisees. But the devisee of a mortgaged estate is not entitled to be exonerated out of personal estate specifically bequeathed: See O'Neal v. Head, 1 P. Wm. 693. A fortiori, such a devisee is not entitled to call upon the devisees of other lands, not charged by the testator with debts, for contribution; even though the debt were secured by bond and mortgage, and such other estates were therefore liable to the creditor (as they would be by law in this state, for, in Pennsylvania, we know that all lands are charged with the payment of debts): 2 Powell on Devises, 674. And such seems to be the case of Clifton v. Bent, 1 P. Wm., where one died indebted by bond, who by his will had given a legacy of £500, and devised his freehold lands to B. in fee, leaving a personal estate sufficient only to pay the bond: the legatee shall not stand in the place of the bond-creditor, to charge the bond in regard to the land specifically devised otherwise, if the land had descended to the heir, and such seems to be the law as laid down in Galton v. Hancock, 2 Atk. 431. The case of O'Neal v. Head, is not unlike this now before us; A. died seised of a real estate in fee, which he had mortgaged for £500, and possessed of a leasehold, devised the former to his eldest son in fee, and gave the latter to his wife, leaving debts which would exhaust all his personal estate, except the leasehold given to his wife; and the question was, whether the leasehold premises devised to the wife should be liable to discharge the mortgage; and it was decreed, by the master of the rolls, after taking time to consider, that as the testator had charged his real estate by this mortgage, and on the other hand specifically bequeathed the leasehold to his wife, the heir should not disappoint her legacy by laying the mortgage-debt upon it, as he might have done, had it not been specifically devised; and though the mortgaged premises were also specifically given to the heir, yet he, to whom they were thus devised, must take them cum onere, as probably they were intended. That by such a construction each devise would take effect. In support of this principle, Powell, in his Treatise on Mortgages,

cites the case of Lutkins v. Leigh, where the testator having mortgaged certain lands, devised them to his wife for life, with remainder over, and gave her a legacy of £1500, and bequeathed· the residue of his personal estate to other persons; the personal estate not being sufficient to pay the £1500 and liquidate the mortgage, Lord Talbot held, the devisees must take the devised estate *cum onere*, and the same principle seems to have been adopted by the courts in Pennsylvania. Hence we find it determined in the case of Ruston v. Ruston, 2 Dall. 243, by Chief J. M'Kean, that specific and pecuniary legacies bequeathed to children, ought not to be brought in ease of particular land, encumbered with a mortgage, devised to another child: for, he says, the devisee of the real estate must take it *cum onere*, that is, subject to the mortgage. If we apply these principles to the case now before us, it is manifest that the petitioner is not entitled to contribution from the other devisees.

The counsel for the petitioner rely upon the case of Morris's Executors v. M'Cannoughy, 2 Dall. 189, to support the claim now made; but that was a different case from this. There the executor of the mortgagee was enforcing the collection of the money from the estate of the mortgagor, and the Court held, that all the land of the testator was the debtor in the hands of his devisees, and should contribute proportionably. It would seem there was a judgment against the entire estate, which shows clearly, that the Court did not determine a principle different from what we have stated. And if it is argued they did, it was decided in 1792, and the case of Ruston v. Ruston, above cited, was decided in 1796, which makes it the latest and binding authority.

There is nothing in the will of the testator from which it can be collected there was an intention on his part that the petitioner should take this piece of land discharged of the encumbrance created by him upon it. When the ·will was made he knew of the mortgage given, and the object of its execution. He was aware that his wife was entitled to dower out of the land he had conveyed to Reuben Haines, and he made no provision for his widow in his will, nor gave her anything in lieu and satisfaction of her dower at common law; hence, in opposition to the legal presumption, a Court could with some degree of propriety infer, that the testator intended that the devisee should take¯the property subject to this contingent encumbrance. In the absence of any declared intention to the contrary, the law requires us to infer, that, as between this

18        M 2

and the other devisees, the testator designed that the petitioner should take the land *cum onere*. In adopting such a conclusion no hardship is visited upon the devisee. The testator could dispose of his property in the way he deemed best; to one clogged with encumbrances, and to another free and clear, untrammelled with liens, and we have only to carry out the provisions of his will in accordance with settled legal principles. If Mr. Mason had chosen to designate any other fund for this debt, or required contribution from the other devisees, we certainly would compel it. But, while his testamentary writing contains no such declaration, we must infer, that he never intended that those to whom he specifically gave other land, should join in relieving this devisee from the burthen resting on that portion of the estate he has taken under the will.

This petitioner asks for contribution on another ground, and for another object. It is this : he alleges that after the death of Christopher Mason, Susan, his widow, made her claim upon both of said tracts of land for dower, and that he has paid to her the sum of $504.28 on this demand of dower, for which he contends the other legatees ought to make contribution. It seems to me, the mere statement of the demand is sufficient, without taking up much time to show that it cannot be enforced. This woman had an equal claim upon all the other lands devised to those who are now called upon to contribute ; and it surely would be unjust, after they have been compelled to pay the one-third of the rents of their land, or given to Susan Mason the use of the one-third, from the death of her husband, now to call upon them to relieve George Hocker from the burden he has borne in common with them. No one can doubt that, when he took the land under the will, he was conscious of this legal claim of the widow; and the principle of law is equally clear, that he accepted the devise subject to this claim, consequently, he must bear it himself. For the reasons above mentioned, we are of the opinion, that George Hocker is not entitled to contribution from the other legatees, for any of the claims now presented before us ; and, therefore, order that his petition be dismissed.