# Dobkin *v*. Landsberg et ux., Appellants.

*Vendor and vendee—Sale subject to mortgage—Merger of agreement in subsequent deed—Presumption—Rebuttal—Assignee of agreement of sale—Intention as to release of vendee—Evidence—Actions—Parties—Jurisdiction—Deed.*

1. The presumption of law is that the acceptance of a deed, in pursuance of article of agreement for the sale of land, is satisfaction of all previous covenants. To rebut such a presumption, the intention to the contrary must be clear and manifest.

2. The law, whether through the working of equitable principles or on the theory of an implied promise, fixes the one who has the property with an obligation to indemnify his vendor against loss from existing mortgages; this obligation arises as soon as the vendee takes any character of possession under the contract of purchase (he then being the equitable owner of the property), and continues at least till the delivery of the deed of conveyance; but, after this takes place, it is unusual to look to the prior contract for evidence of the obligation to indemnify; ordinarily, under such circumstances, the deed is depended upon for that purpose.

3. Where articles of agreement stipulate that a portion of the consideration shall be the retention of an existing mortgage, and the vendee thereafter assigns the agreement to another, and the assignee tenders to the vendor a deed containing the "under and subject clause" as to the mortgage, which the vendor refuses to sign, because not made to the vendee as grantee, the question arises, in a suit for specific performance by the assignee against the vendor, whether the obligation of the original vendee to indemnify the vendor, was intended to be consummated and ended by the conveyance.

4. In such case, the court will not pass upon the question by the documents considered alone, or by the facts attending the execution thereof, but will require plaintiff to amend his bill so as to bring in the original vendee as an indispensable party defendant to the proceeding, so that the latter's liability, if any, to the vendor, may be definitely determined.

5. A party is indispensable when he has such an interest that a final decree cannot be made without affecting it or leaving the controversy in such a condition that the final determination may be wholly inconsistent with equity and good conscience.

6. The absence of an indispensable party goes to the jurisdiction of the court, and an objection to the proceeding on that ground may be raised at any time.

Argued January 13, 1922.   Appeal, No. 195, Jan. T., 1922, by defendants, from decree of C. P. No. 2, Phila. Co., June T., 1920, No. 3878, for plaintiffs on bill in equity, in case of Benjamin Dobkin, assignee of Harry Cylinder v. Frank Landsberg et ux.   Before MOSCH-ZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAF-FER, JJ.   Reversed.

Bill for specific performance.   Before STERN, J.
The opinion of the Supreme Court states the facts.
Decree for plaintiff.   Defendants appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Yale L. Schekter,* for appellants.—There is no mutuality of remedy as between vendor and assignee and equity will not decree specific performance at the suit of the assignee of vendee: Heckman's Est., 236 Pa. 193; Ballou v. March, 133 Pa. 64.

An agreement for the sale of real estate involving an element of personal trust, is not assignable: Delaware Co. v. Diebold Safe, etc., Co., 133 U. S. 473.

Where a party has agreed to purchase land of another and assume an encumbrance thereon, the obligation is personal to him and cannot be performed by his tendering a deed running to a third person: May's Est., 218 Pa. 64; Greenspan v. Margolis, 70 Pa. Superior Ct. 373.

The implied covenant of indemnity to which the defendant vendor was entitled in this case does not arise out of the agreement alone, but out of the executed conveyance: Stanhope's Est., 184 Pa. 414.

The express or implied covenant in the articles of agreement does not survive the deed: Shontz v. Brown, 27 Pa. 123; Seitzinger v. Weaver, 1 Rawle 384; Little v.

Thropp, 245 Pa. 550; Titus v. Poland Coal Co., 263 Pa. 33; Buchanan v. Dawson, 34 Pa. Superior Ct. 400.

*B. D. Oliensis,* with him *I. Austin Wolfe,* for appellee. —The agreement to take land under and subject to an existing mortgage, is treated under the law as a part of the purchase price which the vendee undertakes to pay to the vendor: Moore's App., 88 Pa. 450; May's Est., 218 Pa. 64; Greenspan v. Margolis, 70 Pa. Superior Ct. 373; Campbell v. Shrum, 3 Watts 60.

The vendor is entitled to recover the entire purchase price by virtue of the agreement of sale, irrespective of the deed: Korman v. Trainer, 258 Pa. 362.

This case is ruled by Stockton v. Gould, 149 Pa. 68. See also Lehman v. Paxton, 7 Pa. Superior Ct. 259; Blatz v. Denniston, 7 Pa. Superior Ct. 310.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 6, 1922:

Plaintiff, Benjamin Dobkin, sued in equity to compel specific performance of a written contract, wherein defendants agreed to sell, and one Harry Cylinder to purchase, a certain piece of real estate in the City of Philadelphia, for $7,000, payable thus: "$150 on the signing of this agreement......and the balance......as follows —$3,000 by retaining the existing first mortgage, and $3,850, in cash, at time of settlement." The mortgage in question had been created some six years prior to the agreement of sale, and was secured by the personal bond of one of the defendants. The vendee in the agreement, Cylinder, made no effort to perform personally his part of the contract, but, by writing endorsed thereon, assigned all his rights to the plaintiff, Dobkin, for a valuable consideration. Dobkin tendered to defendants, for execution, a deed conveying title to him, instead of Cylinder, the instrument setting forth that the conveyance was made "under and subject nevertheless to the payment of an existing mortgage debt or principal sum of

three thousand dollars." Defendants refused to sign, stating they were ready and willing to execute a deed to Cylinder, in accordance with the terms of the contract between them and him, but they would not convey to plaintiff; thereupon this suit was brought. After hearing, on pleadings and proofs, the bill was dismissed. Subsequently, a reargument was ordered, and the court below, having changed its view, granted the relief prayed for; defendants have appealed.

Appellants first contend that "a contract, to be enforced specifically, must be mutual both as to remedy and obligation"; that, as they could not sue plaintiff to enforce their rights as vendors under the agreement of sale, —made with the former's assignor, and not with him,— hence plaintiff should be held incapable of enforcing his alleged rights thereunder, against them, by a bill for specific performance. To this contention plaintiff replies that, since defendants had an ample remedy, by action for purchase money, there existed all the mutuality the law required. We shall not discuss this interesting feature of the controversy, however, because the case was decided by the court below upon another point, and we feel the present appeal must be determined on a governing principle, calling for a retrial, which will probably eliminate the question sought to be raised by the contentions just stated.

Plaintiff claims that an agreement for the sale of real estate may be assigned by the vendee, since, on the execution and delivery of the contract, the purchaser of the property becomes an "owner ab initio" (Kerr v. Day, 14 Pa. 112, 116; Napier v. Darlington, 70 Pa. 64, 67; Schaeffer v. Herman, 237 Pa. 87, 90-1, 93, 96-7); and, speaking in a general sense, this position is true; but, so far as the inquiry thus sought to be raised is before us at all, the question is not simply whether the rights accruing to a vendee under an ordinary contract of sale can be assigned, it goes further than that,—the point is, When a purchaser of real estate assumes or has cast upon

him an obligation toward the vendor of a personal nature
(here, to indemnify defendants against loss from the ex-
isting mortgage), which, ordinarily, would be subse-
quently incorporated in the contemplated deed of con-
veyance, or cast by law on the grantee there named, so
that, after execution and delivery of the deed, it would
not be necessary or usual to depend longer, for the en-
forcement of the obligation, on the covenants of the prior
contract, under these circumstances, can an assignee of
such a vendee insist on the conveyance being made di-
rectly to him, instead of to the original purchaser, who
had agreed by the contract of sale to assume the obli-
gation in question? And, as we shall explain later, this
question gives rise to several others, at least one of
which is controlling against plaintiff, on the present
appeal.

The obligation here involved rests on the doctrine that,
when a property is sold subject to an existing mortgage,
the grantee has a contingent liability to indemnify the
grantor against future personal loss by reason of the
mortgage debt; but, if such liability exists, or ever ex-
isted, against the vendee named in the present contract
of sale, it was cast upon him by implication, for, as may
be seen by the excerpt from the contract, which appears
at the beginning of this opinion, there is no such under-
taking expressed in terms; in this connection see Blank
v. German, 5 W. & S. 36, 42.

The view first taken by the court below was that, there
being a liability on the vendor to pay the mortgage debt
out of his personal estate, he "had a right to choose his
own debtor, and, therefore, could insist upon the grantee
named in the deed being the same as the vendee to whom
he had chosen to sell the property" (which position de-
fendants still insist is right, citing Burns v. Freling,
98 Mo. App. 267, 269; Hussey v. Roquemore, 27 Ala. 281,
289; Crabtree v. Levings, 53 Ill. 526; Rudd v. Savelli,
44 Ark. 145; Rice v. Gibbs, 40 Neb. 264, 266; Mont-
gomery v. De Picot, 153 Cal. 509, 513; Hounchin v. Sal-

yards, 155 Iowa 608, 613; Hopkins v. Phillips, 76 Pa. Superior Ct. 243, 245); but the view which subsequently prevailed was that "the obligation,—on the part of one who agrees to purchase a property under and subject to an existing mortgage,—to indemnify the vendor against personal liability, arises out of the original agreement itself, and the liability of indemnity thus created is not merged in the deed conveying the title, therefore, it becomes a matter of no consequence......who is named in the deed as grantee." In other words, the court below held that the assignee of the original vendee could enforce specific performance against the vendor, without prejudice to the latter, because, even after the deed was made and delivered to such assignee, the vendor would still have his right, under the original contract, to force the vendee named therein to indemnify him, the vendor, against personal liability for the mortgage debt; hence, reasoned the court, the vendor is in no sense deprived of his right to "choose his own debtor."

Thus the ultimate decision was reached by prejudging a very nice point concerning the alleged liability of one not a party to this record, and the decree against defendants is frankly made to rest on the basis of the continuance of such liability. The question of the propriety of entering the decree under these circumstances necessarily arises, and it involves an inquiry as to whether or not the rules of law depended upon and the facts attending their application are established beyond future controversy by all concerned, and will support an order which, in effect, compels defendants to accept, in part payment for their property, the liability so adjudged.

There are a great many cases in Pennsylvania discussing the subject of the character of the liability of a vendee,—who takes real estate subject to a previously created mortgage,—to indemnify the vendor against loss arising out of the existence of such a debt; but we have not been referred to, nor does our own research disclose, any wherein such a liability was enforced, or attempted

to be enforced, against a vendee who had not, as a matter of fact, actually taken over the real estate in controversy. Each vendor in turn seems to have been given the sole advantage of the liability of the one to whom he either conveyed or turned over the real estate, or for whose benefit he so acted. Whereas, under the rule contended for by plaintiff, the present vendors might at any future time hold, as indemnitor, the vendee named in the contract of sale (who, as we now understand the facts, never had any character of possession) and likewise the latter's transferee; while the vendee himself either would not be in a position to hold any one, or his transferee (the grantee named in the deed from the vendors) would be answerable to both the vendors, and vendee,—an anomalous situation.

Several of our cases refer to the obligation to indemnify as founded on principles of equity and fair dealing, the theory of these decisions being that one who becomes an owner, in possession, of real estate, with an existing mortgage thereon, "must be supposed to intend to indemnify" the vendor against such mortgages: see Stanhope's Est., 184 Pa. 414, 416, 418; Trevor v. Perkins, 5 Wharton 244, 252-3, and authorities there cited. In the first of the cases just named, we adopted, Per Curiam, the opinion of Judge PENROSE, wherein is stated, what that learned jurist conceived to be the guiding principle, thus: "The purchaser of an equity of redemption means at the time of the contract to buy the estate subject to the mortgage. ......If he enters into no obligation with the party from whom he purchases, either by bond or contract of indemnity, to save [him] harmless from the mortgage, yet this court, if he receives possession and has the profits, would, independent of contract, raise upon his conscience an obligation to pay money due upon the vendor's transaction of mortgage; for, becoming owner of the estate, he must be supposed to intend to indemnify the vendor against the mortgage." Other cases call the obligation purely contractual in character (see Campbell v. Shrum,

3 Watts 60, 64; Girard, etc., Co. v. Stewart, 86 Pa. 89, 91); while again it is spoken of as impliedly contractual: see McCracken's Est., 29 Pa. 426, 428; Woodward's App., 38 Pa. 322, 326; Metzgar & Gernert's App., 71 Pa. 330, 332; Taylor v. Preston, 79 Pa. 436, 443; Faulkner v. McHenry, 235 Pa. 298, 301. The following cases, inter alia, fail either to theorize upon or dogmatically to classify the obligation, mentioning it both as ascribable to principles of equity and as contractual in character, or discussing it simply in connection with the Act of June 12, 1878, P. L. 205, and the effect there given to the words "under and subject": Kearney v. Tanner, 17 S. & R. 94, 97; Blank v. German, 5 W. & S. 36, 42; Buckley's App., 48 Pa. 491, 496; Burke v. Gummey, 49 Pa. 518, 519; Lennig's Est., 52 Pa. 135, 139; Moore's App., 88 Pa. 450, 453; Merriman v. Moore, 90 Pa. 78, 80; Taylor v. Mayer, 93 Pa. 42, 44; Green v. Rick, 121 Pa. 130, 139; Blood v. Crew Levick Co., 171 Pa. 328, 334; Old Colony T. Co. v. Allentown, etc., Transit Co., 192 Pa. 596, 618; May's Est., 218 Pa. 64, 69, 70; Tritten's Est., 238 Pa. 555, 557.

It is not necessary for instant purposes, to determine which doctrine, concerning the source of the obligation, is the true one. The net result of all our cases is that the law, whether through the working of equitable principles or on the theory of an implied promise, fixes the one who has the property with an obligation to indemnify his vendor against loss from existing mortgages; this obligation arises as soon as the vendee takes any character of possession under the contract of purchase (he then being the equitable owner of the property: Reed v. Lukens, 44 Pa. 200), and continues at least till delivery of the deed of conveyance (Campbell v. Shrum, 3 Watts 60, 64; McCracken's Est., 29 Pa. 426, 428; Taylor v. Preston, 79 Pa. 436, 442), but, after this takes place, it is unusual to look to the prior contract for evidence of the obligation to indemnify,—ordinarily, under such circumstances, the deed is depended upon for that purpose.

Where an obligation is impliedly raised, it may be so released. Whether, when the vendor, at the vendee's behest, makes the conveyance to a third party, the former thereby releases the vendee from all obligation as indemnitor, and accepts in his place the grantee named in the deed,—in other words, whether any prior subsisting obligation merges in the conveyance,—is purely a matter of the intention of the parties at the time, and no governing conclusion on this important point should be resolved from the papers alone, until all concerned have had an opportunity to present additional relevant proofs, if any they have; this rule the court below entirely overlooked, which error requires us to remit the record for a new trial, as we shall explain later, and more at large, in this opinion.

At the next trial, should no satisfying evidence on the point of merger be produced, other than the papers in the case (the contract of sale, the assignment thereof and the proposed deed of conveyance, which latter, as previously stated, is expressly written "under and subject" to the existing mortgage), these, standing alone, it can well be argued, are consistent with an intention to supersede any original indemnity obligation, arising out of the terms of sale, by the provision of the deed in that regard, and the obligation incidental to the grantee's position as such,—although, in the absence of the vendee, no ruling on this point is made; but, since the record must go back to the court below, it seems wise to review the authorities on the general subject of merger.

Judge RICE, when in the common pleas, tersely and correctly said: "The general rule, in the absence of fraud or mistake, or of an intent to the contrary, is that an antecedent contract, for the purchase of land, is merged in the deed," adding that, upon the delivery and acceptance of the deed, there exists a "prima facie presumption" of merger (see Thomas v. Henderson, 4 Kulp, 390, 391); and this is sustained by our decisions.

In Crotzer v. Russell, 9 S. & R. 78, 80, Chief Justice TILGHMAN recognizes the rule just stated, and, particularly, that merger depends on the intention of the parties, as evidenced by the attending circumstances of each transaction.

Cases, involving contracts of sale followed by deeds of conveyance, may be cited where it was held that no merger had occurred as to the particular part of the contract sought to be enforced: see Close v. Zell, 141 Pa. 390, 400, and Lehman v. Paxton, 7 Pa. Superior Ct. 259, 263, for examples; but even in these instances the general rule, favoring the theory of merger, is admitted.

Stockton v. Gould, 149 Pa. 68, 69, the chief authority relied on by plaintiff, does not control the present case. There the property had been conveyed to a third party, instead of to the vendee named in the contract of sale; the action was against the original vendee, and the court below was sustained in refusing to instruct that the vendee's obligation to indemnify the vendor was merged in the conveyance to the third party; but the report of the case particularly notes that "no evidence was offered by defendant" to explain the transactions involved, and plaintiff, as appears from an examination of the record, presented evidence that a merger was not intended. The report is meagre, and the reasons prompting the affirmance of the judgment are not stated; but an examination of the paper-books shows that, in an agreement of exchange of real estate, the parties expressly assumed the mortgages on the properties to be granted to them respectively, and there was an express covenant in the agreement on part of defendant to personally assume the mortgage debt in controversy. As said before, plaintiff offered evidence that there was no intention to waive or merge that covenant of the agreement by the execution of the deed to a third person; he testified the execution of the deed by him to the son of defendant was by mistake; that the name of the party with whom he contracted was J. H. Gould, the defendant, whereas the

name of the person to whom he subsequently conveyed was J. G. Gould, the son of defendant; that the deed was prepared by J: H. Gould and delivered to him, the plaintiff, for signature, without mention of the fact that it had been drawn to the son instead of to the vendee himself, as required by their agreement. Under the circumstances there shown, the transferee was but a "dry trustee," and the original vendee remained liable (Girard, etc., Co. v. Stewart, 86 Pa. 89, 91); this may well have been the real ground of our decision in that case.

The authorities upholding the general rule, of merger, are in the majority; we shall review some of them which contain relevant rulings or appropriate discussion.

In Wilson v. M'Neal, 10 Watts 422, 426-7, this court said: "Articles of agreement for conveyance of land are in their nature executory, and the......deed......is deemed prima facie execution of the contract:...... cases may be supposed where the deed would be deemed only a part execution of the contract, if the provisions of the two instruments manifested such to be the intention of the parties, but the prima facie presumption of the law, arising from the [delivery and] acceptance of a deed, is that it is the execution of the whole contract."

In Shontz v. Brown, 27 Pa. 123, 131, the doctrine is stated as follows: "The presumption of law is that the acceptance of a deed in pursuance of articles is a satisfaction of all previous covenants; the law supposes that the grantee agreed to take the title at his risk: Seitzinger v. Weaver, 1 Rawle 377. Though in special circumstances, such as were presented in Selden v. Williams, 9 Watts 12, a deed may be considered, not as a merger of prior articles, but only as part performance, yet the general rule is that a purchase is consummated by the conveyance; after which the parties have no recourse to each other except for imposition or fraud, or upon the covenants in the deed: Bailey v. Snyder, 13 S. & R. 160; Farmers', etc., Bank v. Galbraith, 10 Pa. 490."

The syllabus to Seitzinger v. Weaver, 1 Rawle 377, well epitomizes Judge GIBSON's opinion thus: "The presumption of law is that the acceptance of a deed, in pursuance of articles of agreement, is satisfaction of all previous covenants; and, although there may be cases in which such acceptance is but a part execution of the contract, yet, to rebut the legal presumption, the intention to the contrary must be clear and manifest." See also Gregory v. Griffin, 1 Pa. 208; Creigh v. Beelin, 1 W. & S. 83, 88; McKennan v. Doughman, 1 P. & W. 417, 419; Titus v. Poland Coal Co., 263 Pa. 24, 33, and cases there cited.

In Jones v. Wood, 16 Pa. 25, 38, after stating the court below was right in instructing that the delivery and acceptance of a deed "was a consummation of the prior agreement and operated to put an end to all questions concerning [among other things] the purchase money to be paid," this appears: "As a general rule......the parties to the transaction are absolutely precluded from looking behind the conveyance for subjects of strife suggested by their previous......contracts"; the court adding, the doctrine was applicable to all parties in interest, there being in that case a transfer, by the vendee named in the sale agreement, of his interest to a third party (as in the case now before us), a deed by the original vendor to this third party, and a dispute between the vendee and his assignee.

In Cronister v. Cronister, 1 W. & S. 442, 444, we stated that, as between vendor and vendee, the execution of a deed by the former, acceptance by the latter, and the giving of a bond for the purchase money, merged the agreement of sale and prevented the vendor from raising any question as to the adequacy of the consideration. See also Moser v. Miller, 7 Watts 156, 158, where we said, inter alia, that, under the circumstances there present, "the deed must be regarded as containing the last agreement of the parties on the subject" of the consideration to be paid.

Haggerty v. Fagan, 2 P. & W. 533, 537-9, presents a ruling to this effect: When a deed has been executed in pursuance of a prior agreement, it is prima facie evidence the latter had so merged that no action could be maintained on any of its covenants; we there say, the parties, by the conveyance, put their construction on the prior agreement.

Plaintiff in the case before us contends, and the court below proceeded on the theory, that the obligation to indemnify the vendor was part of the consideration and, as such, it could not be superseded by the deed of conveyance; but, as will be noticed from some of the cases already cited, a vendor is often precluded by his deed of conveyance from afterwards raising questions concerning the consideration. Of course, where the purchase price is represented entirely by cash, the execution and delivery of a deed will not prevent the grantor from recovering any unpaid consideration, but, where a portion of the price is represented by an obligation, on the part of the vendee, to indemnify the vendor against an existing debt on the property (as claimed in the instant case), and an effort is made to enforce that obligation, questions would then arise, to be decided according to the evidence offered and admitted, whether the obligation of the antecedent contract had been entirely superseded by that contained in the deed, or, whether it was the intention of the parties to keep alive the original obligation; and, in a case like the present, where the second obligation is fixed upon a different party, this inquiry would be very pertinent.

As a general rule, an agreement for the purchase of land will merge in the deed consummating the sale, but a covenant or obligation, not intended "to be consummated by the deed," will not merge: Harbold v. Kuster, 44 Pa. 392, 394. Therefore, the question in a suit such as we have mentioned might well be, Was the obligation of the original vendee, to indemnify the vendor, intended to be consummated by the conveyance? In other words,

The deed being executed by the vendor to a party other than the vendee named in the contract of sale, was not the latter thereby released from any possible obligation to indemnify the former? Since the vendee is not a party to this suit, we do not intend here to indicate an opinion as to how such a question should be answered; it can be decided, as a controlling factor, when, and only when, he is present on the record, and thus has an opportunity to be heard as to the facts involved and their legal significance.

To the suggestion that the documents in the case must be allowed to speak for themselves, the answer is: In some instances it may be shown by parol that an effect, which usually is given to a written instrument, was, as a matter of fact, not intended by the parties concerned. For example, in Backenstoss v. Stahler's Administrators, 33 Pa. 251, 254, it was shown that growing crops, which ordinarily would have passed by a conveyance of land, were reserved; and this was allowed to be proved by evidence of a parol agreement, to that effect, between the parties in interest. So here, in the event of a suit on the original agreement of sale, to enforce the alleged liability of the vendee named therein, it might be shown that, albeit such a liability, under the ordinary rules of law, could be held to exist (a point upon which we do not rule), yet, as a matter of fact, it was agreed otherwise between those concerned, their intention being that the transferee of the vendee, on the delivery of the deed, was to occupy the place of the latter, so far as the liability in question is concerned: in this connection see Girard, etc., Co. v. Stewart, 86 Pa. 89, which shows that, even in a suit against a vendee who took title with an "under and subject" clause in the deed, facts may be shown which will relieve him from the prima facie liability thus appearing; see also Metzgar and Gernert's App., 71 Pa. 330, 332; and Merriman v. Moore, 90 Pa. 78, 80.

On the present record, however, whether the documents in the case are considered alone or in connection

with the facts attending their execution, it cannot be determined, in the absence of the vendee, what force should be given to them, so far as the latter's alleged liability to the vendors is concerned; for, obviously, such a determination could have no effect upon the vendee nor be of any benefit to the vendors,—on the contrary, it might put them to material inconvenience and eventual loss. Therefore, we cannot decree a conveyance from the vendors to plaintiff, by undertaking to determine the liability of one who is not a party to the proceeding; the result of such an attempt might be to pay the vendors for their property in that which, when they came to realize on it, would prove of no legal value, and this a court will refuse to do, as "unjust" and "inequitable." For discussion of the principles governing the rule that courts will not proceed in the absence of indispensable parties, see our opinion, filed simultaneously herewith, in Fineman v. Cutler [the next case], and authorities there cited: also see Black v. American International Corp., 264 Pa. 260, 264, and Hoover v. Pontz, 271 Pa. 285, 288.

If, at another trial, it shall be decided that plaintiff is entitled to specific performance of the contract, then the question will be presented, In what form can such relief best be granted to do exact justice to all concerned? and, in this connection, Shall defendants be ordered to convey directly to the assignee of the vendee, or might that course entail upon them either possible loss or future material inconveniences, in proving liability on the part of the one they may look to, subsequently, as indemnitor? To guard against the last-mentioned contingencies, were a direct conveyance to the assignee of the vendee decreed, Should the vendee be ordered to give his personal bond, as evidence of his continuing liability, or, should the situation be worked out by directing two conveyances, one from defendants to their immediate vendee and the other from the latter to his assignee? These are some of the questions in the case that suggest themselves, but they cannot be decided until

all parties in interest have had a full opportunity to be heard thereon.

For reasons stated above, the decree appealed from is reversed, the record is remitted with directions that,—if, within two weeks from the filing of the remittitur, plaintiff amends his bill and, by due and proper means, makes Harry Cylinder, and his wife, if one he has, parties defendant,—the case shall be tried de novo and such decree entered as the facts proved may legally and equitably require; otherwise, the original decree dismissing the bill is to be forthwith reinstated, unless the court below, on cause shown, grants an extension of time. Appellee to pay the costs to date.